## VILSON v. UNITED STATES.

### No. 6828.

Circuit Court of Appeals, Ninth Circuit.

Nov. 28, 1932.

Barnett H. Goldstein, of Portland, Or., for appellant.

Geo. Neuner, U. S. Atty., and Rex Kimmell, Asst. U. S. Atty., both of Portland, Or.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

To reverse conviction on three counts, (a) unlawful possession of intoxicating liquors, (b) unlawful manufacture of intoxicating liquors, (c) unlawful possession of a still and equipment designed for the manufacture of intoxicating liquors, this appeal is prosecuted. The issue is presented on denial of a motion for directed verdict.

In consideration of the evidence on a motion for a directed verdict, the evidence must be considered in its most favorable aspect to the appellee. United States v. Scarborough (C. C. A.) 57 F.(2d) 137; Knable v. United States (C. C. A.) 9 F.(2d) 567; see, also, Burton v. United States, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Kelly v. United States (C. C. A.) 258 F. 392. If there is substantial evidence it must be submitted to the jury, whose function it is to consider and weigh it, and this includes credibility of witnesses. Montana Tonopah Mining Co. v. Dunlap (C. C. A.) 196 F. 612; United States v. Burke (C. C. A.) 50 F.(2d) 653; United States v. Lesher (C. C. A.) 59 F.(2d) 53; Toledo, St. L. & W. R. Co. v. Howe (C. C. A.) 191 F. 776; Woodward-v. Atlantic Coast Line R. R. (C. C. A.) 57 F.(2d) 1019; Engstrom v. De Witt (C. C. A.) 58 F.(2d) 137.

The record not only shows there is substantial evidence to sustain the charges, but tended to show that defendant aided and abetted others in the offenses on which defendant is convicted, and that defendant engaged with others in a common conspiracy to do such acts and in either case each of the parties so engaged is guilty of the offenses in issue. Samich v. U. S. (C. C. A.) 22 F.(2d) 672, at page 673; Shively v. United States (C. C. A.) 299 F. 710. The common ob-

ject of the associated persons forms a part of the res gestæ, and evidence was admissible, even though conspiracy was not charged. Tuckerman v. United States (C. C. A.) 291 F. 958. All of which was for the jury's consideration in determining the guilt or innocence; and under section 550, title 18, USCA, as aider and abettor he is guilty as principal.

▇▇▇▇ It must be assumed the issue was submitted to the jury upon the applicable legal aspects, and full and fair consideration of the record convinces us that the judgment must be affirmed. The still was found in a shed or garage on premises consisting of a house, barn and a shed or garage, and also a small garden, on the Marquam road. The premises had been under surveillance for some time by government agents, who were reliably informed that a still was being operated on these premises. May 26, they saw the defendant working "around in the garden patch." On May 27, they saw a Ford coupé with green wheels come out of the gate about 5:30 p. m., which they later found parked in front of the house where the defendant lived, the automobile being registered in the name of another living at the same place. On May 28, at 8 or 9 o'clock p. m., they saw defendant's car, a black Buick, inside of the yard between the house and gate, and about 9 o'clock p. m., they saw two men walk back and forth on the porch smoking cigarettes, and also saw them walking to a doorway of the garage or shed, open the door, and saw "a flare came up." This is the place where the still was. Saw them walking back to the shed several times between 9 and 9:30. The defendant's Buick car "pulled out" about 9:30. A woman was sitting in defendant's car. One man came from the house, got in the car, and drove it away. They heard the woman in the car say, "Good night, boys"; saw the men walking back and forth after the car left, to the shed or garage, open the door, and "a flare of light came out of the shed"; also saw this before the car left. On May 30, defendant "drove up in the black Buick car with a lady"; parked outside the gate on the road. He "hallooed" and defendant Caesar answered. Defendant then went inside. May 29, agents saw the Ford coupé with green wheels coming out on the Marquam road and turn toward Portland. Agents walked up the Marquam road to nearly opposite the premises and smelled "odor of fermented mash." On June 1, about 9 o'clock a. m., the defendant drove a Buick panel body truck into the premises, turned around, and stopped between the garage and the house. "He got out of the truck, went into the house, came back and unlocked the padlock on the door of the garage, which is the still house." Defendant went into the building, came out carrying a gallon jug in his hand, and entered again the house; soon came out carrying a bundle under his left arm wrapped in newspaper; went to the road and away at about 11 o'clock a. m. At 3:15 p. m., a Ford coupé, green wheels, driven by the defendant, drove into the premises; defendant got out of the car, went into the house, and shortly returned to the car from the front of the house, carrying in his hand a "ten gallon keg which he put in the Ford coupé." Caesar, codefendant, was in the house at the time. About 5 o'clock p. m. he drove away.

On June 2d, with a deputy sheriff, the agents went to the premises, "waited in the woods"; they saw defendant and another drive up the Marquam road in the same coupé; defendant opened the gate, and the car was driven in, and the parties were joined by Caesar. The search warrant was then executed. A 60-gallon still was found in the shed or garage, three 100-pound vats full of mash, and about eight gallons of "moonshine whisky."

It is obvious that no error was committed in submitting this case to the jury.

Affirmed.