UNITED STATES of America

v.

Elliott KAHANER, Antonio Corallo, Robert M. Erdman, James Vincent Keogh, and Sanford J. Moore, Defendants.

United States District Court
S. D. New York.
Feb. 16, 1962.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, William G. Hundley, John F. Lally, Sp. Attys., Dept. of Justice, Washington, D. C., for the United States.

William W. Kleinman, Brooklyn, N. Y., for defendant Elliott Kahaner.

Michael P. Direnzo, New York City, for defendant Antonio Corallo.

John P. McGrath, New York City, for defendant James Vincent Keogh.

Albert J. Krieger, New York City, for defendant Sanford J. Moore. Theodore Krieger, New York City, of counsel.

WEINFELD, District Judge.

These are motions made by four of five defendants who are charged with conspiracy to obstruct the due administration of justice.

The single count indictment alleges that the five defendants conspired together with others, named as coconspirators but not as defendants, corruptly to influence and endeavor to influence, obstruct and impede the due administration of justice in the United States District Court for the Eastern District of New York. It is charged that the conspiracy embraced attempts to obtain dismissal of charges against four of six individuals named in a criminal complaint filed before a United States Commissioner in that District, and, further, attempts to obtain suspended or light sentences for Moore, a defendant herein, and others who had been indicted in that District for crimes alleged in the complaint, to wit, fraudulent concealment of assets in a bankruptcy proceeding and conspiracy so to do. In the bankruptcy prosecution, Moore and two co-defendants (the latter being named herein as co-conspirators, but not as defendants) entered pleas of guilty. Moore was sentenced to three years imprisonment and the others to lesser terms.

## MOTIONS FOR A SEPARATE TRIAL

The defendants Kahaner and Keogh move, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, 18 U.S. C.A., for a separate trial from the defendant Moore. He is one of the persons with respect to whom it is alleged that the defendant Kahaner, to carry out the conspiracy, would and did attempt to obtain dismissal of the complaint before the United States Commissioner and thereafter, following Moore's indictment, would and did attempt to obtain a suspended sentence for him.

The basis of the motion for a separate trial is the contention, made upon information and belief by the respective attorneys for the movants, that Moore, after the termination of the alleged conspiracy and after he had been sentenced, made a statement or confession and also testified before the Grand Jury which returned the present indictment; that his statement and Grand Jury testimony not only inculpated him, but also implicated Kahaner and perhaps involved Keogh; that the prosecution intends upon the trial to offer Moore's statement in evidence against him; and finally, that Moore's defense is antagonistic to that of Kahaner.

Recognizing that Moore's statement would be admissible against him upon the trial, but not against them, the moving defendants urge that it may be of such a highly prejudicial nature that admonitory instructions to the jury limiting it to Moore alone would be futile.

Defense counsel surmise the content of Moore's statement and his Grand Jury testimony by reason of the fact that his sentence was reduced from three years to one year following his appearance before the Grand Jury. They suggest that Moore's motion for a reduction, the file of which was ordered sealed by the sentencing court, was favorably acted upon because he has been and is cooperating with the prosecution.

 The problem presented—that of protecting an alleged co-conspirator against the prejudicial force of a hearsay statement incompetent as against him, but competent against the declarant, an alleged co-conspirator—is not uncommon, and arises in most conspiracy or joint trials.[1] The courts have had occasion to deal with it frequently.[2] The general rule is that persons jointly indicted should be tried together,[3] particularly so

1. See Blumenthal v. United States, 332 U.S. 539, 559, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

2. See Delli Paoli v. United States, 352 U.S. 232, 239 n. 5, 77 S.Ct. 294, 1 L.Ed. 2d 278 (1957); United States v. Ball,

163 U.S. 662, 672, 16 S.Ct. 1192, 41 L. Ed. 300 (1896).

3. Hall v. United States, 83 U.S.App.D.C. 166, 168 F.2d 161, 163 (D.C.Cir.), cert. denied, 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775 (1948).

where the indictment charges a conspiracy or a crime which may be proved against all the defendants by the same evidence and which results from the same or a similar series of acts.[4] But a single joint trial, however desirable, may not be had at the expense of a defendant's right to a fundamentally fair trial.[5] Economy of judicial manpower and the prompt trial of those accused of a crime must be weighed against possible unfairness to a defendant.[6] However, the public interest in avoiding duplicitous, time-consuming and expensive trials is such that separate trials of jointly indicted defendants—with the inevitable disclosure of the Government's entire evidence upon the first—should be granted only when it appears that a joint trial will prejudice one or more defendants. As stated by this Court in a similar situation:

"To be sure, since guilt is personal, the ideal of perfection would be that each defendant face a jury of his peers in a separate trial where evidence admissible only against him would be heard by the jury. Thus, any danger of transference of the illicit conduct of others to the defendant would be eliminated. Since the ideal is unattainable—either because of the nature of many crimes, or for other practical reasons—the defendant is entitled to a separate trial as a matter of right only upon a showing of prejudice * * *." United States v. Cafaro, 26 F.R.D. 170, 172 (S.D. N.Y.1960).[7]

Thus, the court whose discretion is invoked must decide whether under the circumstances of a particular case the admonitory instruction to a jury will be sufficient to safeguard each defendant's rights.

■ The fact that a declarant's statement contains incriminating references to his alleged co-conspirators is not sufficient in and of itself to require a separate trial;[8] nor is the fact that there is hostility between one or more defendants, or that one defendant may try to save himself at the expense of another, conclusive on the issue.[9] More must be shown.

■ The ultimate question is whether, under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct.[10] In sum, can the jury keep separate the evidence that is relevant to each defend-

4. United States v. Lebron, 222 F.2d 531, 535 (2d Cir.), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955); United States v. Cohen, 124 F.2d 164, 165–166 (2d Cir. 1941), cert. denied, Bernstein v. U. S., 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210 (1942).

5. See Schaffer v. United States, 221 F.2d 17, 19, 54 A.L.R.2d 820, (5th Cir. 1955); United States v. Haupt, 136 F.2d 661, 671 (7th Cir. 1943); Hale v. United States, 25 F.2d 430, 438–39 (8th Cir. 1928).

6. Compare Cataneo v. United States, 167 F.2d 820, 823 (4th Cir. 1948).

7. "Perfection is impossible, like other human institutions, criminal proceedings must be a compromise. * * *" Learned Hand, J., In re Fried, 161 F.2d 453, 465, 1 A.L.R.2d 996 (2d Cir.) cert. granted, 331 U.S. 804, 67 S.Ct. 1753, 91 L.Ed. 1826 writ dismissed, 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384 (1947) (concurring opinion).

8. United States v. Caron, 266 F.2d 49, 51 (2d Cir. 1959). See also Costello v. United States, 255 F.2d 389, 395 (8th Cir.), cert. denied, Cannella v. United States, 358 U.S. 830, 79 S.Ct. 51, 3 L.Ed. 2d 69 (1958).

9. United States v. Cohen, 124 F.2d 164, 166 (2d Cir. 1941), cert. denied, Bernstein v. United States, 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210 (1942); Dauer v. United States, 189 F.2d 343 (10th Cir. 1951).

10. Cf. United States v. Stromberg, 268 F.2d 256, 264–265 (2d Cir.), cert. denied, Lessa v. United States, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959).

ant[11] and render a fair and impartial verdict as to him? If so, though the task be difficult,[12] severance should not be granted.

◼ The Court at this juncture of the proceeding is without the necessary information to decide whether or not Moore's statement is of such a prejudicial nature to other defendants that its admission in evidence, despite precautionary instructions by the trial judge, will spill over and subtly affect the jurors, imposing upon them the difficult, if not well nigh impossible, task of blotting out hearsay references which may incriminate any of Moore's co-defendants. The movants base their allegations of possible prejudice upon newspaper reports and public statements by Moore at the time his sentence was reduced. The nature of the alleged statement by Moore or his Grand Jury testimony is not known at this time. Such references, if any, that he may have made therein to other defendants can only be the subject of conjecture.[13] Accordingly, the Court is of the view that the defendants have not now shown sufficient to establish that the statement, if offered upon the trial, will be of such a prejudicial nature that severance is compelled.[14]

The sweep of Moore's admissions, their pervasive force, their cumulative effect and their likely impact upon a co-defendant can be judged more realistically against the background of the trial itself and the independent evidence presented against the nondeclarant defendants.[15] Thus, the trial court may conclude against the framework of the entire evidence that Moore's statement is "largely cumulative"[16] or only "glancingly" affects the other defendants,[17] and that the admonitory instruction is adequate. On the other hand, the statement may be so "damning"[18] that the trial court perforce will conclude that the instruction is but to keep the promise to the ear and break it to the hope—that the inculpatory sweep of the statement imposes such a psychologically difficult task upon the jurors in segregating the evidence as to each defendant that in end result one or more would be deprived of a fair trial.[19] In such an eventuality, various solutions may resolve the problem.

11. Cf. United States v. Lotsch, 102 F.2d 35 (2d Cir.), cert. denied, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939).

12. Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

13. Contrast the situation in Schaffer v. United States, 221 F.2d 17 (5th Cir. 1955), where the content of the declarant's statement and its relation to the facts to be proven against the nondeclarant coconspirator were known before trial because of the statement's introduction at the second of two prior trials of the same case.

14. See United States v. Haupt, 136 F.2d 661, 673-674 (7th Cir. 1943), where the Court contrasted the error in refusing to sever after the evidence was in to the propriety of denying a pretrial motion.

15. See United States v. Haupt, 136 F.2d 661, 673-674 (7th Cir. 1943); Krause v. United States, 147 F. 442 (8th Cir. 1906).

16. United States v. Delli Paoli, 352 U.S. 232, 242, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). Cf. United States v. Keegan, 141 F.2d 248, 258 (2d Cir. 1944), rev'd on other grounds, 325 U.S. 478, 65 S.Ct. 1203, 89 L.Ed. 1745 (1945) (aside from no mention of them in declarant's statement, co-conspirators' guilt was established by other and abundant proof).

17. United States v. Delli Paoli, 352 U.S. 232, 247, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957) (dissenting opinion).

18. Ibid. See Schaffer v. United States, 221 F.2d 17, 19 (5th Cir. 1955) (nondeclarant present with declarant on every occasion relevant to crime); Hale v. United States, 25 F.2d 430, 438 (8th Cir. 1928) (only other evidence against nondeclarant was testimony of confessed criminal with a "bad general character"). Cf. Anderson v. United States, 270 F.2d 124, 126 (6th Cir. 1959) (no evidence against nondeclarant except co-defendants' admissions; Court reversed for insufficiency of evidence while upholding denial of severance).

19. "The danger rested * * * in the risk that the jury, in disregard of the court's direction, would transfer, consciously or unconsciously, the effect of the * * * admissions * * * to

■ The statement may be edited so that any prejudicial matter as to other defendants is deleted,[20] and it is restricted to Moore alone. If elimination of the objectionable material is not feasible,[21] the prosecution may decide not to offer the statement and to forego its cumulative[22] value. Such was the prosecution's decision in Dauer v. United States, 189 F.2d 343 (10th Cir.1951).

■■ If the Government insists upon admission of the statement, the court may decide that its impact upon the other defendants is so pervasive and unfair as to outweigh its evidential value against Moore, the declarant, and exclude it.[23] As was suggested by Judge Learned Hand in United States v. Gottfried,[24] in this situation there would be no absolute right to the use of the statement.[25] Cumulative evidence, while competent as to one defendant, may be excluded when its probative value is counterbalanced by its unfair prejudicial effect upon those as against whom it is not competent[26]—indeed, as undue prejudice may lead to exclusion of even entirely competent cumulative evidence.[27]

■ In the event the Government resists exclusion on the ground that Moore's statement is indispensable in the prosecution against him, the trial court would have the power at that point, upon motion by the other defendants claiming irremediable prejudice, to grant a severance with the right of the Government to elect whether it desired to continue to trial against Moore or against the other defendants.[28]

Under all the circumstances, the motion for a separate trial is denied with leave to renew upon the trial.[29]

## MOTIONS FOR BILLS OF PARTICULARS

The defendants Kahaner, Keogh, Corallo and Moore each move for a separate order directing the service of a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure.

The indictment, after references to the proceedings before the United States Commissioner and the United States District Court for the Eastern District of New York, states the means by which it is alleged the conspiracy was carried

---

the other * * * defendants." Blumenthal v. United States, 332 U.S. 539, 559, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947).

20. Cf. United States v. Jacangelo, 281 F. 2d 574 (3d Cir. 1960); People v. Lombard, 4 App.Div.2d 666, 168 N.Y.S.2d 419 (1957).

21. See United States v. Delli Paoli, 229 F.2d 319, 321 (2d Cir. 1956), aff'd 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957).

22. In any event, there must be some independent evidence tending to establish the corpus delicti. Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

23. Compare for the extreme situation, United States v. Gordon, 253 F.2d 177, 183 (7th Cir. 1958), where the Court held the objectionable statement, being only exculpatory, did not rise to the statute of an admission by the declarant.

24. 165 F.2d 360, 367 (2d Cir.), cert. denied, 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948).

25. United States v. Haupt, 136 F.2d 661, 671–672 (7th Cir. 1943). See the dissenting opinion by Judge Frank in United States v. Delli Paoli, 229 F.2d 319, 324 (2d Cir. 1956), aff'd, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); dissenting opinion by Mr. Justice Jackson in Lutwak v. United States, 344 U.S. 604, 623, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

26. See United States v. Toner, 173 F.2d 140, 142, 143 (3d Cir. 1949).

27. Uniform Rule of Evidence 45; Model Code of Evidence rule 303 (1942); McCormick, Evidence 319 (1954); 2 Wharton, Criminal Evidence and Procedure § 673 at 612 (12th ed. 1955); 6 Wigmore, Evidence § 1864 at 491 (3d ed. 1940).

28. Cf. Pointer v. United States, 151 U.S. 396, 403, 404, 14 S.Ct. 410, 38 L.Ed. 208 (1894).

29. Cf. United States v. Bonanno, 177 F. Supp. 106, 118 (S.D.N.Y.1959); United States v. Stromberg, 22 F.R.D. 513, 526 (S.D.N.Y.1957).

out and also enumerates fourteen overt acts. The means list nine separate specifications of acts and conduct of one or more conspirators and the nature thereof. Each defendant who is not named in a particular specification seeks to obtain details as to whether or not it is claimed that he had knowledge of the acts and conduct alleged therein, the name of the person who conveyed such information to him, when and where such knowledge was imparted to him and the substance of the conversation.

■ ■ As to these demands, if the acts and conduct attributed to one conspirator were in furtherance of the claimed conspiracy during its existence, then it is immaterial whether or not other alleged co-conspirators were present or participated therein or had knowledge thereof.[30]

Those defendants who are named in paragraph "4"—the "means" allegation—seek further particularization of the time and place of the acts and conduct attributed to them; the names of all persons present; the substance of the conversations and details of agreements between or among various conspirators.

As to the fourteen overt acts, here, too, the movants seek specific particulars as to dates and places; the names of all persons present; the substance of conversations, if any; the persons present when telephone calls were made and even the telephone number called.

Finally, each movant also asks that the Government state the exact date and place where it is claimed he became a member of the conspiracy; the persons with whom he conferred in connection with joining the conspiracy; the substance of each conversation; the exact date when and where each such conversation occurred.

The total items requested by all defendants go far beyond that to which they are entitled. To require the Government to furnish the minutiae sought would be tantamount to a preview of its case in advance of trial and compel a disclosure of its evidence, including the names of witnesses.

■ The allegations of the means by which the conspiracy was to be carried out and the enumeration of the overt acts are alleged in sufficient detail to apprise the defendants of the charges against them and the substance of what the Government will rely upon to establish the existence of the conspiracy. The indictment fully meets the test set forth in Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). The addition thereto of the particulars hereinafter directed will furnish the defendants with the information necessary to enable them properly to prepare for trial, to meet the Government's case and to avoid surprise upon the trial.

■ The existence of a conspiracy and a defendant's participation therein is usually established by circumstantial evidence based upon independent proof of each alleged co-conspirator's acts, conduct and statements and the totality of conduct of all the participants and the reasonable inferences to be drawn therefrom. To require the Government to specify the exact date when and the place where a particular defendant knowingly attached himself to the claimed conspiracy, the name of the person with whom he conferred about joining the conspiracy, and the other items on this subject sought by the defendants would unduly restrict the Government's proof.[31] Particulars as to the formation of a conspiracy have almost uniformly been denied.[32]

30. Blumenthal v. United States, 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947); see Lutwak v. United States, 344 U.S. 604, 617, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

31. See Blumenthal v. United States, 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947); May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994, 1007–1008 (D.C.Cir.), cert. denied, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949).

32. United States v. Bonanno, 177 F.Supp. 106, 119 n. 14 (S.D.N.Y.1959); United States v. Lieberman, 15 F.R.D. 278, 281

■ The motions are granted only to the extent of requiring the Government to serve a bill of particulars setting forth the following:

1. With respect to the "various other persons" alleged in paragraph 1 of the indictment, whose names it is stated were unknown to the Grand Jury when it returned the indictment, if their identities are presently known, set forth their names.

2. If the identities of such persons are still unknown, but if hereafter and prior to the trial they should become known to the Government, then promptly and within a reasonable time prior to the trial, set forth such information. In the event the identities of any such persons are ascertained during the trial, the information shall forthwith be furnished to the defendants.

3. With respect to the "means" paragraph—allegations 4(a) through 4(j), with the exception of 4(c)—state:

(a) the approximate date or dates of the acts, events or occurrences referred to therein; and

(b) the location thereof.

4. With respect to each overt act, state:

(a) the approximate date thereof;

(b) the approximate time; and

(c) the location thereof.

### MOTION BY THE DEFENDANT MOORE FOR COPIES OF HIS STATEMENTS

The defendant Moore moves pursuant to Rule 16 of the Federal Rules of Criminal Procedure to inspect and copy any statements made by him to law enforcement agents and to the United States Attorney.

This Court has been of the view that one who voluntarily made statements to law enforcement officials and subsequently became a defendant in a criminal prosecution was entitled to a pretrial inspection of such statements.[33] This position found support among some colleagues in this and other district courts.[34] Other colleagues have disagreed and have held that such a statement was not discoverable under Rule 16, since it was not a tangible object "obtained from or belonging to the defendant." [35] The division among the District Court Judges in this District was recently set at rest by our Court of Appeals which adopted the latter view [36] and, of course, its ruling controls.

■ It is unnecessary to decide whether, apart from Rule 16, the Court has inherent power in the interest of justice to require the prosecution to furnish a defendant with a copy of his own statement [37]—an issue not foreclosed by the Murray ruling—since the facts presented on this application do not warrant such relief.

Accordingly, this motion is denied.

### MOTION BY THE DEFENDANT KEOGH FOR INSPECTION OF HIS GRAND JURY TESTIMONY

Defendant Keogh testified before the Grand Jury which returned the indictment against him. He moves pursuant to Rule 6(e) to obtain a copy of his

(S.D.N.Y.1953); United States v. Van Wagenen-Sager, Inc., 34 F.Supp. 735 (N.D.N.Y.1940).

33. United States v. Peace, 16 F.R.D. 423 (S.D.N.Y.1954).

34. E.g. United States v. Fancher, 195 F.Supp. 448 (D.Conn.1961); United States v. Shindler, 24 F.R.D. 142, 146 (S.D.N.Y.1959). The Court in Fancher thoroughly discusses all of the cases on both sides of this problem.

35. E.g. United States v. Angelet, 26 F.R.D. 408 (S.D.N.Y.1960); United

States v. Peltz, 18 F.R.D. 394 (S.D. N.Y.1955). See United States v. Fancher, 195 F.Supp. 448 (D.Conn.1961), for a complete collection.

36. United States v. Murray, (2d Cir. 1962) 297 F.2d 812.

37. Shores v. United States, 174 F.2d 838, 845, 11 A.L.R.2d 635 (8th Cir. 1949). Cf. Cicenia v. La Gay, 357 U.S. 504, 511, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958); Leland v. Oregon, 343 U.S. 790, 801, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).

testimony before that body. The motion is made upon the ground that when he testified he was under extreme emotional and mental stress and is unable to recall the questions and answers before the Grand Jury with any degree of certainty that his recollection is correct. His testimony cannot be used to impeach any witness who might be called by the Government upon the trial. Its use by the defendant, as he concedes, is for the purpose of refreshing his recollection as to those matters about which he was interrogated.

Preliminarily, a substantial question exists as to the authority of the Court to direct disclosure of grand jury minutes for such a purpose. Rule 6(e), which governs secrecy of grand jury proceedings, permits disclosure in three situations:

(1) to attorneys for the Government for use in the performance of their duties;

(2) preliminarily to or in connection with a judicial proceeding; and

(3) to a defendant upon a showing that grounds exist for a motion to dismiss the indictment for matters occurring before the Grand Jury.

Obviously the present motion does not fall within categories 1 and 3. And the use of the defendant's own testimony to refresh his own recollection hardly seems a purpose contemplated under category 2.

■ But apart from this preliminary objection, the long-established policy of the Federal courts,[38] one particularly entrenched in this District,[39] is to preserve the secrecy of grand jury proceedings. This policy requires that disclosure of grand jury testimony should rarely be granted, and then only under compelling circumstances.[40]

The defendant presses that his request is limited to his own testimony, and since the indictment has been found and the accused apprehended, the usual reasons for preserving the secrecy of the grand jury proceedings no longer apply.[41] The issue presented is whether there has been a showing of such compelling need for the grand jury minutes of the defendant's testimony as to justify lifting the veil of secrecy.

38. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); United States v. Procter & Gamble Co., 356 U.S. 677, 681, 7 S.Ct. 983, 2 L.Ed.2d 1077 (1958); United States v. Johnson, 319 U.S. 503, 513, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943).

39. United States v. Costello, 119 F.Supp. 159 (S.D.N.Y.1954); United States v. Garrson, 291 F. 646, 649 (S.D.N.Y.1923).

40. E.g. for use in perjury cases where a defendant's grand jury testimony may afford him an affirmative defense, United States v. Remington, 191 F.2d 246, 251 (2d Cir. 1951); upon the trial itself to impeach a witness, to refresh his recollection or to test his credibility, see United States v. Procter & Gamble Co., 356 U.S. 677, 683, 7 S.Ct. 983, 2 L.Ed. 2d 1077 (1958); United States v. Socony Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); to a defendant who can show an inconsistency between the trial testimony and grand jury testimony of a Government witness. United States v. H. J. K. Theatre Corp., 236 F.2d 502, 507 (2d Cir. 1956), cert. denied, 352 U.S. 969, 77 S.Ct. 359, 1 L. Ed.2d 323 (1957); United States v. Alper, 156 F.2d 222, 226 (2d Cir. 1946).

41. The reasons were summarized by Mr. Justice Brennan, dissenting, in Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 405, 79 S.Ct. 1237, 1244, 3 L.Ed.2d 1323 (1959): "(1) To prevent the accused from escaping before he is indicted and arrested or from tampering with the witnesses against him. (2) To prevent disclosure of derogatory information presented to the grand jury against an accused who has not been indicted. (3) To encourage complainants and witnesses to come before the grand jury and speak freely without fear that their testimony will be made public thereby subjecting them to possible discomfort or retaliation. (4) To encourage the grand jurors to engage in uninhibited investigation and deliberation by barring disclosure of their votes and comments during the proceedings." See also United States v. Rose, 215 F.2d 617, 628–629, (3d Cir. 954); United States v. Alper, 156 F.2d 222, 226 (2d Cir. 1946).

The defendant himself has submitted no affidavit to support his motion. There is no claim by him that he is without recollection of either the subject or substance of his grand jury testimony. His motion rests upon his attorney's affidavit that because of emotional strain the defendant is unable to recall the numerous questions and answers and, accordingly, the minutes are necessary to refresh his recollection as to "the precise matters" concerning which he was interrogated for several hours. Undoubtedly most persons who appear before grand juries as prospective defendants are under some emotional tension. However, it would indeed be unusual for any person, whether calm or under stress, to recall the precise details of his questioning. If this were an adequate basis upon which to require disclosure of testimony, the grand jury minutes should be made available as a matter of course to any witness who is later indicted. Perhaps this should be the rule. While there are those, including this Court, who believe that in an enlightened system of criminal justice defendants who have made voluntary statements to prosecution and investigation officials should, as a matter of simple fairness, receive copies of their statements, such view has not yet found general favor[42] and admittedly there does not appear any doctrinal trend in that direction.[43] To grant this motion on the sole ground advanced would not only breach the historic policy against disclosure of grand jury matters, but would initiate a precedent which appears foreclosed by the rationale of the recently decided Murray case.[44]

There has been no adequate showing to justify the granting of the motion and accordingly it is denied.[45]

42. But see, State v. Murphy, 36 N.J. 172, 175 A.2d 622 (1961); State v. Johnson, 28 N.J. 133, 145 A.2d 313 (1958).

43. Under English procedure, the Crown, in advance of trial, is required to make available not only a defendant's own statement, but those of witnesses, who are also subject to cross-examination by the defendant at a preliminary hearing. The result is a full disclosure of the evidence the Crown will rely upon at the trial. Additional evidence which may be obtained by the prosecution subsequent to the hearing is made available to the defendant by a notice of additional evidence. See Devlin, The Criminal Prosecution in England, 71–73, 117–18 (Yale Univ. Press 1958): Louisell, Criminal Discovery: Dilemma Real or Apparent?, 49 Calif.L.Rev. 56 (1961).

44. United States v. Murray, 297 F.2d 812 (2d Cir. 1962). Cf. United States v. Gilboy, 160 F.Supp. 442, 462–463 (M.D. Pa.1958).

45. Cf. United States v. Wortman, 26 F.R.D. 183, 205–207 (E.D.Ill.1960).